UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01611-JLS-JDE                                                              Date: January 20, 2022
Title:  Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANTS:

Not Present                                                                  Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING MOTION TO REMAND (Doc. 17)**

Before the Court is Plaintiff's Motion to Remand.  (Mot., Doc. 17.)  Defendant opposed, and Plaintiff replied.  (Opp., Doc. 24; Reply, Doc. 25.)  The Court finds this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  Accordingly, the hearing set for **January 21, 2022 at 10:30 a.m**., is VACATED.  For the following reasons, the Court GRANTS Plaintiff's Motion.

**I.      BACKGROUND**

This is an employment class action brought by Plaintiff Steven Gonzalez ("Gonzalez") against Defendants H&M Hennes and Mauritz L.P., Alyse Digildo, and Does 1 through 100 (collectively "H&M").  (Ex. B to Notice of Removal ("NOR"), Compl., Doc. 1-1, ¶¶ 3-5.)  Gonzalez seeks to represent a class of "all current and former non-exempt employees of H&M within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class[.]"  (Compl. ¶ 24.)

Gonzalez asserts nine claims against H&M: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01611-JLS-JDE                                      Date: January 20, 2022
Title:  Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

timely pay wages during employment; (8) failure to indemnify; and (9) unfair competition.  (*Id*. ¶¶ 34-97.)

This case was initially filed in the Superior Court for the State of California, County of Orange on August 18, 2021.  (NOR, Doc. 1, at 1-2.)  On September 30, 2021, H&M removed the case to this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1453.  (*Id*. at 2.)  Gonzalez subsequently moved to remand this case to Orange County Superior Court.  (Mot.)

In its Opposition to the Motion to Remand, H&M has provided the declaration of Joshua Bailey, H&M's Country Employee Relations Manager, to support that H&M has met its evidentiary burden under CAFA to show that the amount in controversy exceeds $5,000,000.  (*See* Bailey Decl., Doc. 24-1.)  Bailey averred that:

- From August 18, 2017 until August 18, 2021, the weighted average hourly pay rate of non-exempt, hourly current and former California employees was approximately $17.76. The approximate average number of non-exempt, hourly California employees actively employed at any given time from August 18, 2017 until August 18, 2021 was 2881. From August 18, 2017 until August 18, 2021, the approximate average shift length of hourly, non-exempt California employees was 6.53 hours (excluding time clocked out for meal periods), with approximately 1,555,721 shifts greater than five hours and 443,921 shifts over eight hours. The approximate average length of all shifts over eight hours for non-exempt, hourly California employees from August 18, 2017 until August 18, 2021 was 8.26 hours.
- From August 18, 2018 until August 18, 2021, with a weighted average hourly pay rate of current and former non-exempt, hourly California employees was approximately $18.09. The average number of non-exempt, hourly California employees actively employed at any given time from August 18, 2018 until August 18, 2021 was 2896. From August

| **CIVIL MINUTES – GENERAL** | 2 |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-01611-JLS-JDE            Date: January 20, 2022
Title: Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

      18, 2018 until August 18, 2021, the approximate average shift length of hourly, non-exempt California employees was 6.59 hours (excluding time clocked out for meal periods), with approximately 353,061 shifts over eight hours. The approximate average length of all shifts over eight hours for non-exempt, hourly California employees from August 18, 2018 until August 18, 2021 was 8.26 hours.
- For each biweekly pay period from August 18, 2020 until August 21, 2021, H&M issued wage statements for 26 pay periods to hourly, non-exempt actively employed California employees. One thousand, seven hundred and ninety-four wage statements were issued to actively employed, non-exempt hourly
- H&M's records show that during the past three years, from August 18, 2018 until August 18, 2021, more than 7,000 individuals within the putative class alleged by Plaintiff have been discharged, either voluntarily or involuntarily.

(*Id.* ¶¶ 4-7.)

## II.   LEGAL STANDARD

      "[CAFA] vests federal courts with original diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, (2) the proposed class consists of at least 100 class members, (3) the primary defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief, and (4) any class member is a citizen of a state different from any defendant." *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01611-JLS-JDE                                           Date: January 20, 2022
Title:  Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

(C.D. Cal. Feb. 5, 2018) (Staton, J.) (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007); 28 U.S.C. § 1332(d)).[1]

"In determining the amount in controversy [under CAFA], courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). Where damages are not explicitly pleaded or evident from the face of the complaint, and federal jurisdiction is questioned on that basis, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million[.]" *Id.* (citing *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013)). As this Court described in *Mortley*, "[a] defendant's preponderance burden 'is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages.'" 2018 WL 708115, at *2 (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)); *and see Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation."). This is in line with the Ninth Circuit's characterization of "amount in controversy" as "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The Ninth Circuit has also held that "CAFA's [amount-in-controversy] requirements are to be tested by consideration of [1] *real evidence* and [2] *the reality of what is at stake in the litigation*, using [3] *reasonable assumptions* underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added).

---

[1]  Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-01611-JLS-JDE                                    Date: January 20, 2022
Title: Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

### III. DISCUSSION

Gonzalez argues that remand is proper because Defendant has failed to establish the amount in controversy under CAFA by a preponderance of the evidence. (Mot. at 9.) H&M's Notice of Removal asserts that even by "[a]ssessing only the waiting time penalties," Gonzalez's fifth cause of action alone "puts at issue $9,486,000 ($15.81 x 8 hours per day x 30 days x 2,500 former employees)." (NOR ¶ 18.) In its Opposition to the Motion to Remand, H&M eschews the basis alleged in the Notice of Removal—which was a 100% violation rate for waiting time penalties only—and instead alleges as follows: $5,006,950.20 in controversy for Gonzalez's waiting time penalties; $11,051,842 in controversy for the meal and rest period claim; $1,830,900 in controversy for the untimely wages claim; $915,450 in controversy for the inaccurate itemized wage statements claim; and $2,365,211.09 in controversy for the overtime pay claim—for a total of $21,170,353.29 in controversy for all of Gonzalez's claims prior to calculation of attorney fees. (Opp. at 20.)

As evidence to support these claims, H&M proffers the declaration of Joshua Bailey, as discussed above. (Bailey Decl.) Bailey states that over the class period, H&M employed an average of 2,881 hourly, non-exempt employees from August 18, 2017 until August 18, 2021, and an average of 2,896 hourly, non-exempt employees from August 18, 2018 to August 18, 2021. (*Id.* ¶¶ 4-5.) Bailey also identified the weighted average hourly pay rate, the approximate average shift length, the number of shifts greater than five hours and eight hours, and the approximate average length of all shifts over eight hours. (*Id.* ¶¶ 4-5.) He also identified the number of wage statements issued to hourly, non-exempt employees, and that 7,000 individuals were alleged to have been discharged in the class period. (*Id.* ¶¶ 6-7.)

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the $5,000,001 amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019). Here, H&M estimates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-01611-JLS-JDE  Date: January 20, 2022
Title: Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

a 20% violation rate for waiting time penalties, meal and rest period violations, untimely wage violations, itemized wage statement violations, and unpaid overtime violations. (Opp. at 14, 16-18.) H&M argues that these violation rates are "based on the language in Plaintiff's Complaint" and supported by the Bailey Declaration. (*Id.* at 14.) H&M explains that "the Complaint's language ('at times')" justifies a 20% violation rate. (*Id.*) This Court, however, has recently reconsidered its approach to the calculation of violation rates, and concludes that neither the language of the Complaint nor the Bailey Declaration gets H&M over the $5 million jurisdictional hurdle.

It is important to note that H&M's only actual evidence is a declaration that provides an estimate of the *total* wages and hours worked of all putative class members during the relevant period. Nothing in the declaration purports to provide evidence that would assist the Court in making a reasonable assumption as to the applicable *violation rate*. Instead, H&M relies upon the Complaint's allegation that H&M engaged in violations "at times." (*See, e.g.,* Opp. at 14.) H&M then translates the "at times" language into a 20%—or once per week—violation rate, an estimate Defendant labels as "conservative." (*Id.*) H&M cites to a handful of cases that offer some support that this language may, at least in the context of meal and rest periods, support the inference of a 20% violation rate; Gonzalez cites to a handful of cases that hold just the opposite. *Compare Luna v. Pronto Cal. Gen. Agency, LLC*, 2020 WL 4883879, at *3 n.1 (C.D. Cal. Aug. 19, 2020) ("Defendants assumption of a 20% violation rate (i.e., one missed rest break and one missed meal break per employee per week) in the Opposition's calculation is reasonable.") *with Duran v. Allegis Global Sols., Inc.*, 2021 WL 3281073, at *3-*5 (N.D. Cal. Aug. 2, 2021) (finding an assumption of a 20% violation rate "unreasonable" where complaint described violations as occurring "at times" or "on occasion").

Having now engaged in the endeavor of weighing a defendant's proposed violation rate on multiple occasions, the Court has become convinced that H&M's approach—which amounts to little more than plucking a violation rate out of the air and calling it "reasonable"—is "a wasteful and silly, but routine, exercise in mathematical fantasyland." *Toribio*, 2019 WL 4254935, at *3. If one is going to assume a violation

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 8:21-cv-01611-JLS-JDE | Date: January 20, 2022 |
| Title: Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al | |

rate based on nothing more than language in a complaint referencing violations "at times," then there is no basis for suggesting that a "violation rate of once per week as opposed to once per month, or once every few months, per class member, is reasonable." *Vanegas v. DHL Express (USA), Inc.*, 2021 WL 1139743, at *3-*4 (C.D. Cal. Mar. 24, 2021). The Court agrees with the observation of the Honorable George Wu:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

*See Toribio*, 2019 WL 4254935, at *3. The Court finds this approach particularly reasonable in light of the final Judgment and attendant release of claims arising out of a settlement H&M entered into in a separate action covering claims between January 8, 2013 and October 31, 2019 for wage statement violations, failure to pay minimum wages, failure to pay overtime wages, failure to provide proper meal and rest breaks, waiting time violations, and PAGA claims related thereto. (Reply at 15; Klein Decl., Doc. 25-2.) That Judgment may impact the number of violations at issue in the present action, and it

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.:  8:21-cv-01611-JLS-JDE                                     Date: January 20, 2022
Title:  Steven Gonzalez v. H&M Hennes & Mauritz L.P. et al

undermines any relevance the Bailey Declaration may have to the Court's determination of the amount in controversy.

Ultimately, it is H&M's burden to demonstrate a sufficient amount-in-controversy by a preponderance of the evidence, and H&M has failed to carry that burden.  *See id.* at *4.  Accordingly, Gonzalez's Motion is GRANTED.

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. This action is hereby REMANDED to the Superior Court of California, County of Orange, originally commenced as Case No. 30-02021-01217029-CU-DE-CXC.

Initials of Deputy Clerk: mku